834 So.2d 465 (2002)
KEVIN ASSOCIATES, L.L.C. (Successor in Interest Through Merger to Yendis Properties, Inc.)
v.
Brett CRAWFORD, Secretary of the Department of Revenue, State of Louisiana.
No. 2001 CA 2652.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
Rehearing Denied December 19, 2002.
*466 Frederick W. Bradley, Nicole Crighton, New Orleans, Counsel for Plaintiff-Appellee Kevin Associates, L.L.C.
John J. Weiler, Cloyd F. Van Hook, Theodore D. Vicknair, New Orleans, Counsel for Defendant-Appellant Brett Crawford, Secretary of the Department of Revenue, State of Louisiana.
*467 Before: FITZSIMMONS, GUIDRY and PETTIGREW, JJ.
FITZSIMMONS, J.
This appeal by Brett Crawford, Secretary of the Department of Revenue, State of Louisiana (Department), challenges the trial court's decision that Kevin Associates, L.L.C. did not owe income taxes to the State of Louisiana. The answer to the Department's appeal alleges that the trial court's award of $28,700.00 in attorney fees exceeded the scope of a remand to it and was "excessive, unprecedented and unfair." For the following reasons, this court affirms.
Kevin Associates, L.L.C. is the successor by merger to Yendis Properties, Inc. (Yendis). Yendis was the name of the corporation under review at the time of the tax charges by the Department. Throughout the entirety of the record the corporation is referred to as "Yendis;" therefore, Kevin Associates, L.L.C. is hereinafter referred to as "Yendis" in this decision. On appeal, the Department urges that the court manifestly erred when it failed to find the following: the commercial domicile of Yendis was in the State of Louisiana; Yendis was subject to the jurisdiction of Louisiana for the purpose of Louisiana corporate income and franchise taxes; and Yendis was subject to Louisiana corporate income and franchise taxes.
In 1991, Yendis, a subsidiary of K & B Incorporated (K & B), was established as a Delaware holding company along with two sister Delaware corporate subsidiaries, Virginia Corporation and Valerie Corporation. Virginia Corporation possessed the stock of the operating companies, K & B Alabama Corp., K & B Florida Corp., K & B Louisiana Corp., K & B Texas Corp., K & B Mississippi Corp., and K & B Tennessee Corp.[1] Various subsidiaries of Yendis owned real estate that was leased to K & B drug stores. The income tax assessment by the Department at issue in this case is based on accrued interest from loans Yendis made to Virginia Corporation.
It is uncontested by the parties that the primary reason for establishing Yendis as a Delaware corporation was to accomplish tax advantages. The minutes from the first annual meeting of the board of directors of Yendis state that its business purpose was "to receive dividends from its subsidiaries and make loans to affiliated debtor corporations."[2]

COMMERCIAL DOMICILE
Generally, "the tax situs of `intangibles' is at the domicile of their owners." North Baton Rouge Development Company, Inc. v. Collector of Revenue, 304 So.2d 293, 296 (La.1974). Pursuant to La. R.S. 47:241 and 47:243, the situs of an incorporeal "upon which a non-resident individual realizes a profit as the result of a sale or an exchange thereof is deemed to be the domicile of the owner of that intangible, and the profit is allocable to the state of such domicile for income tax purposes unless the incorporeal has acquired a business situs elsewhere." Johnson v. Collector of Revenue, 246 La. 540, 548, 165 So.2d 466, 468-469 (La.1964). Section 243 provides an exception to the rule of allocating profits for intangibles of the corporate taxpayer. "Commercial domicile" has evolved as a term that allows taxation of the activity or property of nonresident corporations by the state. That taxation only occurs when managerial activities have *468 transpired in a quantity and of a type adequate to remove it from the realm of activities and properties located outside of the parameters of the taxing body. Any lesser burden has been held to constitute deprivation of property without due process of law. See North Baton Rouge Development Company, Inc., 304 So.2d at 297.
Yendis was formally domiciled in Delaware, where it established and maintained its only bank account. The Department, however, argues that, other than the payment for the rental of a file drawer in Delaware, the only significant flow of funds through the Delaware account consisted of annual dividends from its subsidiaries. These funds were wired from K & B's bank account in New Orleans to the Yendis's bank account in Delaware and then immediately wired from Yendis's Delaware account back to the K & B New Orleans bank account on the same day as the loans made to Virginia Corporation. The Department, additionally, maintains that the records and management decisions actually originated and were arranged in Louisiana. These actions included the determination of dividends, as well as the preparation and maintenance of accounting records, which were later stored in Delaware. The Department further asserts that Yendis's rental of a single drawer in a Delaware law firm for the retention of its records is not comparable to owning or renting office space in Delaware for purposes of establishing a "presence." It notes that, although many meetings of the Board of Directors occurred in Delaware, four out of five of the directors lived in Louisiana, and an almost equal amount of board meetings actually transpired in Louisiana. Finally, much of the accounting work was prepared in New Orleans, and K & B paid a Louisiana accounting firm for Yendis's tax return bills.
Yendis emphasizes that its sole purpose was to receive dividends and make loans. All dividends were received in Yendis's bank account in Delaware and then transmitted to Virginia Corporation's account in Delaware. The accounting records of all financial transactions were maintained in Delaware. Sydney Besthoff, majority stockholder and chairman of K & B, testified that, in fact, none of the loan funds were ever returned to Louisiana. We note that Yendis had no office, no employees and no bank account in Louisiana. All the annual meetings occurred in Delaware. The corporation had no presence in Louisiana beyond owning stocks in various subsidiary corporations, and receiving dividends from them. Legal counsel for Yendis was located in Delaware. As such, Yendis did not avail itself of the benefits and protections of Louisiana, which might establish a commercial nexus to this state.
There has been no showing that Yendis was not legitimately incorporated as a Delaware holding company. A business decision by an entity, such as Yendis, to structure its corporation within the parameters of a tax exception so that it can minimize tax liability is valid for a taxpayer. United States v. Carlton, 512 U.S. 26, 36, 114 S.Ct. 2018, 2024, 129 L.Ed.2d 22, (O'Connor, J. concurring), quoting from Helvering v. Gregory, 69 F.2d 809, 810 (2nd Cir.1934), aff'd, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed.2d 596 (1935). Borrowing from Judge Learned Hand's wit, a taxpayer "is not bound to choose that [financial] pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." United States v. Carlton, 512 U.S. at 36, 114 S.Ct. at 2024.
Our review of the evidence does not reveal manifest error by the trial court in its determination that a sufficient nexus for the establishment of a commercial *469 domicile in Louisiana was not demonstrated. Additionally, this court's scrutiny of the specific corporate composition and activities associated with Yendis does not unveil any commercial activities that would constitute "doing business" in Louisiana. A non-resident parent company is not subject to the jurisdiction of Louisiana merely because of the existence of one of its subsidiaries in this state, See Jasper v. National Medical Enterprises, Inc., 94-1120, p. 7 (La.App. 1 Cir. 6/23/95), 657 So.2d 604, 608, writ denied, 95-1836 (La.10/27/95), 661 So.2d 1347. Accordingly, we affirm the trial court decision entitling Yendis to a refund of the taxes paid under protest, with interest.

ATTORNEY FEES
On March 31, 2000, the Department filed a motion to compel production of several documents previously requested. Following a May 8, 2000 hearing, an order was signed by the trial court on May 26, 2000, compelling the requested production. Pursuant to a separate motion to compel discovery, the court issued another order on July 12, 2000, mandating that Yendis provide the Department with any documents relative to the incorporation, merger, or reorganization of K & B, Yendis, Virginia, and its subsidiaries, and to provide all correspondence with any law firm relative to any of the aforementioned activities. Following Yendis's alleged failure to respond to the July 12, 2000 order, the Department filed a motion for sanctions on August 24, 2000.
A judgment was signed on October 28, 2000, in which the court awarded the Department the sum of $20,000.00 in attorney fees. On March 7, 2001, the first circuit court of appeal granted writs filed on behalf of Yendis. This court stated that the Department had not proven which of its expenses were caused by Yendis's failure to obey the trial court's order. The case was remanded to the trialcourt to "determine and order the payment of reasonable costs, including attorney fees, caused by relator's failure to obey the trial court's order."
At the May 7, 2001 hearing, the Department attempted to introduce evidence of the failure by Yendis to comply with the May 26 court order, which purportedly resulted in the Department attempting to obtain documents via another more complicated and expensive means. Yendis contested the fact that the hearing addressed both court orders, arguing that it should be limited to the July 12 order that had been remanded for a hearing by the first circuit. The court ultimately ruled that it was not limited to evidence associated with the remanded order because the procedural issue involved a La. C.C.P. art. 1471 sanction.
Louisiana Code of Civil Procedure article 1469, which addresses motions for an order compelling discovery, expressly requires reasonable notice by the parties prior to the court's order to compel and award of attorney fees. The provisions of La. C.C.P. art. 1471, thereafter, address situations in which an Article 1469 order has been issued, but ignored. Article 1471 provides, in pertinent part: "If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just ... or in addition thereto, the court shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure ...." Article 1471 is thus distinguishable from Article 1469 in that it broadly authorizes the court to redress a recalcitrant party's failure to conform to the court's Article 1469 order to compel. Thus, the trial court did not err in receiving argument on *470 both the May 26, 2000 and July 12, 2000 court orders.
At the hearing, the Department alleged that Yendis's lack of response resulted in the Department's attempt to obtain documents from third parties, including a trip to Delaware to ascertain the extent of a corporate presence of Yendis. In support of its claim for attorney fees, the Department submitted a detailed bill for services rendered between July 5, 2000 and April 30, 2001. The statements, which consisted of a total legal bill approximating $150,000.00, contained color-coded markings that delineated the $28,700.00 portion relegated to obtaining the evidence associated with the two orders.
Cloyd Van Hook, a tax attorney who participated in the instant litigation, testified that Yendis contravened the various discovery requests in both orders and consistently failed to provide the Department with documents relative to Yendis, K & B, and the sister subsidiary corporations of Yendis. Based on the evidence presented at the hearing, the court ultimately awarded the Department the requested amount of $28,700.00. While such a large sum appears at first blush to be excessive, given the documented statements of the hours devoted to discovery attempts due to the lack of cooperation by Yendis, we cannot say that the court abused its discretion. Montet v. Lyles, 93-1724, p. 7 (La.App. 1 Cir. 6/24/94), 638 So.2d 727, 731, writ denied, 94-1985 (La.11/18/94), 646 So.2d 377.
For the foregoing reasons, the decision of the trial court is affirmed in all respects. Costs associated with this appeal, in the sum of $5,535.60, are assessed such that Brett Crawford, Secretary of the Department of Revenue, State of Louisiana, shall bear seventy-five percent of the costs, equaling $4,151.70, and Kevin Associates, L.L.C. shall pay twenty-five percent of the costs, or $1,383.90.
AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] Valerie Corporation owned and held the intellectual property rights of K & B.
[2] November 19, 1991 Annual Meeting of the board of directors of Yendis in Wilmington, Delaware.